IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KARISSA DICKINSON,                              CV 04-6123-BR

       Plaintiff,                       OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of
Social Security,

       Defendant.


**KATHRYN TASSINARI**
Drew L. Johnson, P.C.
1700 Valley River Drive, First Floor
Eugene, OR 97401
(541) 434-6466

       Attorneys for Plaintiff

1 - OPINION AND ORDER

**KARIN J. IMMERGUT**
United States Attorney
**CRAIG J. CASEY**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1024

**VIKASH CHHAGAN**
Acting Regional Chief Counsel, Seattle, Region X
**TERRYE E. SHEA**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2143

>       Attorneys for Defendant

**BROWN, Judge.**

>     This action was originally brought by Christopher Dickinson (Claimant) for judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Claimant's protective application for Disability Insurance Benefits (DIB) and found Claimant ineligible for Supplemental Security Income (SSI) payments.  Claimant died on February 25, 2005, and the Court subsequently permitted the substitution of Karissa Dickinson, Claimant's surviving spouse, as Plaintiff.

>     This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough and careful review of the record, the Court **AFFIRMS** the Commissioner's final decision because the Commissioner applied

the proper legal standards and the underlying findings are supported by substantial evidence in the record as a whole.

## ADMINISTRATIVE HISTORY

Claimant filed his application for DIB and SSI on August 20, 2001. The application was denied initially and on reconsideration. A hearing was held on November 25, 2003. At the hearing, Claimant was represented by an attorney. Claimant, his wife, and a vocational expert (VE) testified at the hearing. On December 24, 2003, an Administrative Law Judge (ALJ) issued a decision denying Claimant's application. That decision became the final decision of the Commissioner on February 28, 2004, when the Appeals Council denied Claimant's request for review.

## BACKGROUND

### I. Claimant's Testimony

Claimant was born on May 24, 1976, and was 27 years old at the time of the last hearing. Tr. 67. Claimant completed high school and some college. Tr. 352. Claimant's past relevant work includes employment as a construction laborer, cashier, customer-service representative, security worker, traffic flagger, and fast-food worker. Tr. 352-53.

On his application for benefits, Claimant listed heart-valve replacement, aneurysm, fatigue, back, prior hip injury, and

Marfan's Syndrome as disabling conditions. Tr. 81. At age 17, Claimant underwent surgery to replace a heart valve. Tr. 363. After his heart-valve surgery, he was required to take Coumadin and Atenolol for the remainder of his life. Tr. 363.

On January 25, 2001, Claimant underwent emergency surgery to repair an abdominal aortic aneurysm. Tr. 142. On May 3, 2002, Claimant underwent surgery to repair an aneurysm in his descending thoracic aorta. Tr. 284. Aortic aneurysms are associated with Marfan's Syndrome. Tr. 200.

At the hearing, Claimant testified he was always tired, couldn't sit or stand for very long, and had to take two naps every day. Tr. 357. Claimant asserted he needed to lie down three or four hours per day. Tr. 360. He had pain in his lower back and in the joints of his fingers and hands. Tr. 361. At the time of the hearing, he was taking hydrocodone for pain.

Claimant also testified on an average day he would fix breakfast for his three-year-old daughter and get her dressed. Tr. 363. He then took it easy while his daughter played. During the day, Claimant cared for his daughter, provided what she needed, and changed her diapers. He did not do housework. He microwaved food, but did not do any cooking. His wife took care of cleaning and cooking.

Claimant testified he did some grocery shopping and accompanied his wife on monthly shopping trips to watch their

daughter. Claimant testified he no longer engaged in any hobbies, but he might "look for stuff on the internet." Tr. 365. The heaviest thing he lifted was his daughter, who weighed between 25 and 30 pounds. Claimant testified his doctors at Oregon Health Sciences University (OHSU) told him that he risked tearing his aorta again if he lifted more than ten pounds. Tr. 364.

## II.  Medical Evidence

Except when noted below, Plaintiff does not challenge the ALJ's summary of the medical evidence.

After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 17-20.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial

gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e).

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(f)(1).

## II.  **The ALJ's Decision**

At Step One, the ALJ found Claimant had not engaged in substantial gainful activity since the onset of his alleged disability. Tr. 16.

At Step Two, the ALJ found Claimant had the following impairments that are considered severe under the regulations: "Marfan's Syndrome, status post multiple surgeries for aortic valve replacement, repair of the descending aorta, status post abdominal aortic aneurysm repair, status post pneumothorax with chest pain requiring aortic resection, and a history of back pain/strain." Tr. 17.

At Step Three, the ALJ found Claimant's mental and physical

impairments did not meet or medically equal any of the presumptively disabling conditions in the Listing of Impairments in Appendix 1, subpart P, Regulation No. 4. Tr. 17.

The ALJ determined Claimant retained the RFC to perform a modified range of light work with the following physical limitations: He should avoid "a lot of strenuous activity"; not lift or carry more than 10 pounds frequently with a maximum of 20 pounds occasionally; avoid prolonged walking or standing; only occasionally climb ladders, stoop, kneel, crouch, and crawl; and avoid concentrated noise and vibration. Tr. 20.

At Step Four, the ALJ found Claimant could not return to any former employment. Tr. 20.

At Step Five, the ALJ found Claimant retained the RFC to perform work in a significant number of jobs despite his impairments. Tr. 24. The ALJ relied on testimony from the VE, who opined a person of Claimant's age, education, and RFC could perform the jobs of ticket seller, food checker, bench assembler, and food-order clerk. Tr. 20.

Accordingly, the ALJ concluded Claimant was not disabled at any time through the date of the ALJ's decision. Tr. 21.

## DISCUSSION

Plaintiff contends the ALJ erred at Step Three of the sequential analysis when he found Claimant's impairments did not

impairments did not meet or medically equal any of the presumptively disabling conditions in the Listing of Impairments in Appendix 1, subpart P, Regulation No. 4. Tr. 17.

The ALJ determined Claimant retained the RFC to perform a modified range of light work with the following physical limitations: He should avoid "a lot of strenuous activity"; not lift or carry more than 10 pounds frequently with a maximum of 20 pounds occasionally; avoid prolonged walking or standing; only occasionally climb ladders, stoop, kneel, crouch, and crawl; and avoid concentrated noise and vibration. Tr. 20.

At Step Four, the ALJ found Claimant could not return to any former employment. Tr. 20.

At Step Five, the ALJ found Claimant retained the RFC to perform work in a significant number of jobs despite his impairments. Tr. 24. The ALJ relied on testimony from the VE, who opined a person of Claimant's age, education, and RFC could perform the jobs of ticket seller, food checker, bench assembler, and food-order clerk. Tr. 20.

Accordingly, the ALJ concluded Claimant was not disabled at any time through the date of the ALJ's decision. Tr. 21.

## DISCUSSION

Plaintiff contends the ALJ erred at Step Three of the sequential analysis when he found Claimant's impairments did not

impairments did not meet or medically equal any of the presumptively disabling conditions in the Listing of Impairments in Appendix 1, subpart P, Regulation No. 4. Tr. 17.

The ALJ determined Claimant retained the RFC to perform a modified range of light work with the following physical limitations: He should avoid "a lot of strenuous activity"; not lift or carry more than 10 pounds frequently with a maximum of 20 pounds occasionally; avoid prolonged walking or standing; only occasionally climb ladders, stoop, kneel, crouch, and crawl; and avoid concentrated noise and vibration. Tr. 20.

At Step Four, the ALJ found Claimant could not return to any former employment. Tr. 20.

At Step Five, the ALJ found Claimant retained the RFC to perform work in a significant number of jobs despite his impairments. Tr. 24. The ALJ relied on testimony from the VE, who opined a person of Claimant's age, education, and RFC could perform the jobs of ticket seller, food checker, bench assembler, and food-order clerk. Tr. 20.

Accordingly, the ALJ concluded Claimant was not disabled at any time through the date of the ALJ's decision. Tr. 21.

## DISCUSSION

Plaintiff contends the ALJ erred at Step Three of the sequential analysis when he found Claimant's impairments did not

meet or equal a listed impairment and at Step Five when he found Plaintiff retained the RFC to perform work that exists in significant numbers in the economy. Specifically, Plaintiff asserts the ALJ erred when he: (1) concluded Claimant's impairments did not meet or medically equal Listing 4.10A, (2) improperly rejected Claimant's testimony regarding his symptoms and limitations, and (3) concluded Claimant could perform work existing in the national economy.

I. **The ALJ's Conclusion that Claimant's Impairments Did Not Meet or Medically Equal Listing 4.10A Is Supported by Substantial Evidence.**

Plaintiff contends the ALJ erred at Step Three of the sequential process when he found Claimant's conditions either alone or in combination did not meet or equal a Listed Impairment. Plaintiff contends Claimant's condition met the standards of Listing 4.10A. *See* Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1, 4.10A. Plaintiff also asserts the ALJ failed to explain the reasons why Claimant's impairments did not meet or equal the listing, and, therefore, the ALJ's Step Three analysis was insufficient.

A claimant whose impairments, singly or in combination, meet or equal a listed impairment is presumed to be disabled. 20 C.F.R. § 404.1520(d). "For a claimant to show that his impairment matches a listing, it must meet *all of the specified medical criteria*. An impairment that manifests only some of

those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)(emphasis added).

The claimant bears the burden of proof at Step Three to establish he or she meets or equals a listed impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of developing the record. *Id*. (citing 20 C.F.R. § 404.1512(d)).

The Commissioner must include "the reason or reasons upon which" an unfavorable decision is based. 42 U.S.C. § 405(b)(1). It is not necessary, however, for the Commissioner "to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)(citations omitted).

A purely conclusory statement, however, may not satisfy the Commissioner's burden. In *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990), the Court addressed the sufficiency of an ALJ's decision in which he simply stated a claimant "failed to provide evidence of medically determinable impairments that meet or equal the listings . . . ." The *Marcia* court held the ALJ "must explain adequately his evaluation of alternative tests and the combined effects of the impairments" when he determines whether a claimant's impairments equal a listing. *Id.* The court concluded the ALJ's unexplained conclusion that the claimant had failed to provide evidence to establish that his impairments equaled the

listings did not meet that requirement.

In this case, therefore, the ALJ was required to explain why he found Claimant did not meet the criteria of the Listings of Impairments. As noted, however, Plaintiff still bears the burden of establishing that Claimant's condition satisfied the criteria of a listed impairment under Step Three.

Plaintiff asserts Claimant met the criteria of Listing 4.10A, which provides:

> Aneurysm of aorta or major branches, due to any cause (e.g., atherosclerosis, cystic medial necrosis, Marfan syndrome, trauma), demonstrated by an appropriate imaging technique. With one of the following:
>
> A. Acute or chronic dissection not controlled by prescribed medical or surgical treatment.

The ALJ concluded Claimant's condition did not meet this listing because his aortic aneurysms were controlled by surgical treatment. The record establishes Claimant underwent surgery on two occasions to repair aortic aneurysms. The first surgery in January 2001 was to repair a leaking abdominal aneurysm. The second surgery in May 2002 was to repair a descending thoracic aneurysm. Both surgeries were successful. On June 2, 2002, Claimant saw Mark Gilbert, P.A., for a follow-up examination. Gilbert noted Claimant "continues to do well following repair of aneurysm." Gilbert also recommended Claimant "increase his exercise capability and start walking vigorously."

Plaintiff argues Claimant's condition met or equaled the criteria of Listing 4.10A because "after one acute dissection, he suffered another aneurysm, requiring another dissection. The fact that he had more than one occurrence of this condition indicates that it is not controlled." Although both aneurysms were undoubtedly related to Claimant's Marfan's Syndrome, the medical record indicates the two surgeries were for different aneurysms in different parts of the aorta. Contrary to Plaintiff's assertion, the record does not establish Claimant's second surgery was to repair the first aneurysm a second time.

Although there is come evidence in the record that Claimant continued to be at risk for future aneurysms due to his Marfan's Syndrome, there is no evidence of any ongoing "acute or chronic dissection" of the aorta that was uncontrolled by medical or surgical treatment.

Accordingly, the Court finds the ALJ did not err at Step Three because he provided an adequate factual basis to support his conclusion that surgical treatment controlled Claimant's aneurysms and, therefore, Claimant's condition did not meet or equal the criteria of Listing 4.10A.

### II. The ALJ Did Not Err When He Rejected Claimant's Testimony Regarding the Severity of His Limitations.

Plaintiff argues the ALJ erred when he failed to provide clear and convincing reasons for rejecting Claimant's testimony concerning his fatigue, joint pain, and lifting restrictions.

13 - OPINION AND ORDER

The ALJ rejected Claimant's testimony concerning his severe fatigue because:

> [Claimant's] reports of debilitating fatigue have not been related to any significant underlying etiology, according to Dr. Lear, his current treating physician. Thus, his contention that he is so fatigued that he must lie down between three and four hours a day is not linked to [any] medically determinable severe impairment.

Tr. 19.

When evaluating a claimant's testimony regarding subjective symptoms, the ALJ must perform a two-step analysis. The ALJ first must determine whether the claimant has produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). *See also Smolen v. Chater*, 80 F.3d at 1281-82; *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant need not show his impairment reasonably could be expected to cause the severity of the symptom he alleges but only that the impairment reasonably could have caused some degree of the symptom. *Id. See also Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989). "Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven

14 - OPINION AND ORDER

phenomenon." *Smolen,* 80 F.3d at 1282 (citations omitted).

If there is medical evidence that meets this threshold and no affirmative evidence of malingering, the second part of the analysis requires the ALJ to assess the credibility of the claimant regarding the severity of symptoms. The ALJ can reject the claimant's testimony about her limitations only by offering clear and convincing reasons supported by specific facts in the record that demonstrate an objective basis for the ALJ's disbelief. *Regennitter v. Comm'r*, 166 F.3d at 1296-97. See also *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d at 918. General findings are insufficient. *Lester*, 81 F.3d at 834. The ALJ must identify specific testimony that is not credible and offer specific, cogent reasons for disbelieving it. *Id. See also Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *Dodrill*, 12 F.3d at 918.

Here the record does not contain any objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. In fact, Dr. Lear, Claimant's treating physician, stated he was "left without explanation for [Claimant's] severe fatigue." Plaintiff does not identify any evidence that provides a medical explanation for Claimant's report of severe fatigue, but merely speculates Claimant's fatigue could have been a side effect of Coumadin. Dr. Lear, however, prescribed Coumadin for Claimant and did not

identify it as a possible source of Claimant's alleged fatigue. The Court, therefore, finds the ALJ did not err when he rejected Claimant's testimony that he suffered from debilitating fatigue because Plaintiff did not meet the threshold test of producing evidence of a medically shown impairment that could cause Claimant to experience some degree of fatigue.

The Court finds the ALJ also articulated adequate reasons for partially rejecting Claimant's testimony regarding pain in the joints of his hands and in his back. When weighing a claimant's credibility, the ALJ may consider "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). *See also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005)(ALJ may discredit a claimant's subjective complaints by identifying inconsistencies between his complaints and his daily activities). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

The ALJ found Claimant's testimony was not entirely credible, and the ALJ accurately described inconsistencies between Claimant's testimony and the medical record. The ALJ

explained Claimant's testimony of severe pain in the joints of his hands and back was inconsistent with Claimant's report to his physician that he felt good enough to resume playing basketball. The ALJ also noted Claimant engages in daily activities such as caring for his three-year-old daughter that are inconsistent with Claimant's testimony of debilitating pain.

The Court finds the ALJ adequately explained why he found Claimant's testimony concerning his pain and fatigue not credible. The Court, therefore, concludes the ALJ did not err when he evaluated Claimant's credibility.

### III. The ALJ Did Not Err When He Found Claimant Could Perform Other Work.

Plaintiff argues the ALJ erred at Step Five when he concluded Claimant was capable of performing work. Plaintiff, however, merely restates her assertions that Claimant met the criteria of a listed impairment and the ALJ should have credited Claimant's testimony regarding his limitations. For the reasons set forth above, the Court finds the ALJ did not err in either respect. Accordingly, the Court concludes the ALJ did not err at Step Five when he determined Claimant was capable of performing work.

### IV. The ALJ Did Not Fail to Develop the Record.

Plaintiff argues the ALJ failed to develop the record properly because he failed to seek additional records from Ray Westermeyer, M.D.

17 - OPINION AND ORDER

The ALJ has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)(quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). The duty of the ALJ to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The Court finds the evidence here is not ambiguous or inadequate to allow for proper evaluation. In a letter dated December 21, 2003, Dr. Westermeyer states he considers Claimant disabled. The ALJ gave little weight to Dr. Westermeyer's opinion because it was unclear when Westermeyer had treated Claimant, the opinion was without underlying medical foundation, and Dr. Westermeyer did not provide any assessment of Claimant's functional limitations. The ALJ based his decision on the medical evidence from Claimant's most recent treating physicians, none of whom concluded Claimant was disabled. The Court, therefore, finds the ALJ was not required to develop the record further.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's

decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 28th day of July, 2005.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge